Beverly LEAVELL, Plaintiff,

v.

Francis SHAW, et al., Defendants.

Civil Action No. 95–0199 (TPJ).

United States District Court,
District of Columbia.

Oct. 31, 1996.

Patricia Maureen Thornton, McCarthy, Bacon & Costello, John F.X. Costello, Lanham, MD, for Beverly Leavell.

Paul Howard Ethridge, McCarthy, Wilson & Ethridge, Rockville, MD, Patrick Michael Regan, Koonz, McKenney, Johnson & Regan, P.C., Washington, DC, for Francis Shaw, Debra Shaw.

Margo Brown, Mitchellville, MD, pro se.

Paul Howard Ethridge, McCarthy, Wilson & Ethridge, Rockville, MD, for Anthony Clark.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

In this diversity action for damages allegedly resulting from the death of their daughter, plaintiff Beverly Leavell sues, *inter alia,* her ex-husband, Francis Shaw, in her capacity as successor to him as personal representative of the daughter's estate. The daughter, Felicia Francine Shaw, 11 years old at the time, died in a house fire, apparently ignited by a defective space heater, while she was a guest in her father's District of Columbia home in March of 1992. Shaw's co-defendants were co-owners or co-occupants of the premises. Leavell claims defendants are or were negligent in failing to take precautions that would have prevented the daughter's death. The case is presently before the Court on defendants' motion for summary judgment on grounds of release, accord and satisfaction, and waiver/estoppel.

The record before the Court establishes, as matters of undisputed fact, that Francis Shaw was appointed sole personal representative of his daughter's estate by a Virginia court in February, 1993, after Leavell repeatedly rejected or ignored his entreaties that she join him as a co-representative for purposes of bringing suit. Shortly before the one-year statute of limitations would have expired, Francis Shaw filed a personal representative's action in the District of Columbia under the Wrongful Death and Survival Acts against National Presto Industries

("Presto"), the manufacturer of the space heater believed to have started the fatal fire. Even though she refused to participate in any capacity in the prosecution of the action, as a co-beneficiary of any recovery made by the estate Leavell was kept informed as the lawsuit progressed, and ultimately of its settlement in November, 1994, for $600,000, of which her share of the net proceeds was in excess of $170,000. At no time did she object to Shaw's administration of the affairs of Felicia's estate generally, or specifically with respect to his prosecution of its legal claims for their daughter's death.

In consideration of the settlement with Presto, Shaw executed a so-called "global release," by which he released from liability not only Presto but also

> all other persons, firms or corporations liable or who might be claimed to be liable in any manner, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, both known and unknown, anticipated or unanticipated, to person and property, which have resulted in the past or may in the future develop as a result of the [fire].[1]

Release and Settlement Agreement at 1.

■ Shaw and his co-defendants contend that the release operates to discharge all the world from any further liability for the death of Felicia Shaw, including Francis Shaw himself. They also claim that by her failure to accept appointment as a co-representative of Felicia's estate, as well as her acceptance of the settlement proceeds, Leavell waived or is estopped to interpose any objection to Shaw's alleged mismanagement of the affairs of the estate (other than fraud, of which there is no evidence here) in prosecuting or compromising claims for its benefit.

Leavell cites *Sullivan v. Doyle,* 193 Md. 421, 67 A.2d 246 (1949), for the proposition that one may not sue himself, even when acting in a fiduciary capacity.[2] From this premise she argues that, as Shaw could not have sued himself for any complicity he may have had in causing Felicia's death, so he could not "release" himself from a liability he was unable to assert.

She misconceives, however, the reason for the rule. To the extent the law disallows claims against one's self, it does so to preclude collusive litigation by which third parties may incur vicarious liability. The law does, on the other hand, empower statutory fiduciaries such as a decedent's personal representative to forgo or to compromise possible claims, including claims against the fiduciary himself on behalf of the estate, to assure third parties with whom they deal of their authority to act and to provide finality to transactions by which administration of the estate is brought to a close. *See* VA ST. § 8.01–425. It does not follow that an inability to bring suit against one's self imports an inability to prevent others from doing so as well when acting in a fiduciary capacity.

■ If the validity of the release is sustained, Leavell then asks that she be allowed to amend her complaint to assert a claim against Shaw for breach of fiduciary duty in that, by releasing himself from any liability for their daughter's death, Shaw acted upon a conflict of interest of which she, as a beneficiary of Felicia's estate, is entitled to complain. But Leavell, who has been represented by her own counsel throughout, was fully informed by Shaw's attorneys at every turn, and invited to no avail to participate in the proceedings against Presto. She declined, but then willingly accepted her share of the proceeds of the settlement negotiated by Shaw without objection. In so doing, the Court concludes, she has waived or is estopped to assert any claim she might have had against Francis Shaw and his co-defendants predicated either upon their joint responsibility for Felicia's death or upon Shaw's alleged breach of fiduciary duty in executing a release of himself in connection with the lawsuit against Presto.

It is, therefore, this 31st day of October, 1996,

---

1. Such releases are commonly—indeed, virtually always—used by defendants in settling personal injury claims for which there is a possibility of multiple recoveries or claims-over.

2. *But see, e.g., Krooss v. Maue,* 277 A.D. 973, 100 N.Y.S.2d 226 (1950).

ORDERED, that defendants' motion for summary judgment is granted; and it is

FURTHER ORDERED, that plaintiff's motion for leave to file a third amended complaint is denied; and it is

FURTHER ORDERED, that the case is dismissed with prejudice.